UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL JOSEPH EKDAHL,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>RALPH DIAZ, Warden,<br><br>　　　　Respondent. | Case No.: 1:13-cv-00542-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS RE: RESPONDENT'S MOTION TO DISMISS (Doc. 14)<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

The instant petition was filed on April 16, 2013. (Doc. 1). On April 19, 2013, the Court ordered Respondent to file a response within sixty days. (Doc. 5). On June 3, 2013, Respondent filed the instant motion to dismiss the petition as untimely and for failure to state a cognizable federal habeas claim. (Doc. 14). Petitioner filed his opposition on June 27, 2013. (Doc. 15). In his opposition, Petitioner provided information that rebutted Respondent's timeliness argument; accordingly, on July 3, 2013, Respondent filed a Reply in which he abandoned that claim in his motion to dismiss, but continued to maintain that the petition failed to state a cognizable habeas claim. (Doc. 17). On July 17, 2013, Petitioner filed a request for judicial notice in which he included materials directed at the latter argument. (Doc. 18).

1

**DISCUSSION**

A. <u>Procedural Grounds for Motion to Dismiss</u>

As mentioned, Respondent has filed a Motion to Dismiss the petition as being filed outside the one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1). Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. <u>See</u> <u>Hillery</u>, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a contention that the petition fails to state a cognizable habeas claim, and, hence, the Court's lacks habeas jurisdiction. Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

B. <u>Failure To State A Cognizable Habeas Claim</u>.

Respondent contends that the basis for Petitioner's claim, i.e., the sanctions resulting from a prison disciplinary hearing, do not implicate the fact or duration of Petitioner's confinement, and, hence, it is not properly subject to federal habeas corpus jurisdiction. (Doc. 14, pp. 2-4). Petitioner argues that the disciplinary finding will have a negative impact on his next parole suitability hearing and also that the rules violation will exclude him from any consideration as an early-release inmate in the federal litigation regarding California's overcrowded prison system. (Doc. 17). The Court will address the effect, if any, of the disciplinary hearing and its consequent sanctions on both Petitioner's

2

parole eligibility and possible early release.

    1.   <u>Parole</u>.

Petitioner is presently serving an indeterminate sentence of fifteen years to life for a 1984 conviction for two counts of armed robbery and second degree murder. (Doc. 1, p. 1, 29, 38-39). On November 4, 2010, Petitioner was charged with a serious rules violation, i.e., soliciting a sexual relationship with a non-custody volunteer, resulting from a letter he handed to a female volunteer that appeared to seek a sexual relationship with her. (Doc. 1, p. 50). After first expressing his desire for the love of the volunteer and describing her physical attributes, including "the plumb girls," the letter read, "Can we be the type of friends who touch each others [sic] fun parts?" <u>Id</u>.

A hearing was held on December 11, 2010, after which the hearing officer found Petitioner had committed the rules violation and sanctioned Petitioner with a thirty-day loss of credits and a ninety-day loss of all privileges. (<u>Id</u>., p. 95). The Petitioner alleges various due process deficiencies in the disciplinary process.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. <u>Badea v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 485, 93 S. Ct. 1827 (1973); <u>Ramirez v. Galaza</u>, 334 F.3d 850, 859 (9th Cir. 2003)("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. Indeed, claims challenging the validity of a prisoner's continued incarceration, including the fact or length of the custody, lie within the "heart of habeas corpus" and are cognizable only in federal habeas corpus. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-99, 499 n.14 (1973). In contrast, an action pursuant to 42 U.S.C. § 1983 is appropriate for a state prisoner challenging the conditions of prison life but not the fact or length of the custody. <u>McCarthy v. Bronson</u>, 500 U.S. 136, 141-42 (1991); <u>Preiser v. Rodriguez</u>, 411 U.S. at 499; <u>Badea v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991).

With respect to prison disciplinary and administrative proceedings, it is established that a constitutional claim concerning the application of rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody in violation of the Constitution pursuant to 28 U.S.C. § 2254. See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings). The Supreme Court has held that challenges to prison disciplinary adjudications that have resulted in a loss of time credits must be raised in a federal habeas corpus action and not in a § 1983 action because such a challenge is to the very fact or duration of physical imprisonment, and the relief sought is a determination of entitlement of immediate or speedier release. Preiser v. Rodriguez, 411 U.S. 475, 500.

The Supreme Court's decisions, however, concerning any boundaries between habeas jurisdiction and § 1983 jurisdiction have been rendered in cases involving § 1983 proceedings. It is established that, regardless of the precise relief sought, an action pursuant to § 1983 concerning prison administrative processes is barred if success in the action would necessarily demonstrate the invalidity of the confinement or its duration, or necessarily imply the invalidity of a conviction or sentence. Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (parole processes). However, the limits on habeas jurisdiction, or the appropriate extent of any overlap between habeas and § 1983, have not been definitively addressed by the Supreme Court.

The Supreme Court has adverted to the possibility of habeas as a potential alternative remedy to an action under § 1983 for unspecified additional and unconstitutional restraints during lawful custody, Preiser v. Rodriguez, 411 U.S. at 499-500, but it has declined to address whether a writ of habeas corpus may be used to challenge conditions of confinement as distinct from the fact or length of confinement itself, see Bell v. Wolfish, 441 U.S. 520, 527 n.6 (1979). Nevertheless, the Court continues to recognize a "core" of habeas corpus that refers to suits where success would inevitably affect the legality or duration of confinement. For example, in Wilkinson, the Court noted that if success on a claim would mean at most a new opportunity for review of parole eligibility, or a new parole hearing at which authorities could discretionarily decline to shorten a prison term, then success

would not inevitably lead to release, and the suit would not lie at the core of habeas corpus. Wilkinson, 544 U.S. at 82.

In the singular context of parole, cases in this circuit have recognized a possibility of habeas jurisdiction in suits that do not fall within the core of habeas corpus. Bostic v. Carlson, 884 F.3d 1267 (9th Cir. 1989) (expungement of disciplinary finding likely to accelerate eligibility for parole)[1]; Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the constitutionality of the frequency of parole reviews, where the prisoner was seeking only equitable relief, was held sufficiently related to the duration of confinement). However, relief pursuant to § 1983 remains an appropriate remedy for claims concerning administrative decisions made in prison where success would not necessarily imply the validity of continuing confinement. Docken v. Chase, 393 F.3d at 1030 (characterizing Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) (holding that a § 1983 suit is an appropriate remedy for challenges to conditions [there, administrative placement in a sex offender program affecting eligibility for parole] which do not necessarily imply the invalidity of continuing confinement).

Nevertheless, it is established in this circuit that where a successful challenge to a disciplinary hearing or administrative sanction *will not necessarily* shorten the overall length of confinement, then habeas jurisdiction is lacking. In Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), a prisoner sought relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in administrative segregation. It was held that § 1983 was the appropriate remedy because the alleged constitutional errors did not affect the overall length of the prisoner's confinement; success in the § 1983 action would not necessarily result in an earlier release from incarceration, and the § 1983 suit did not intrude upon the core or "heart" of habeas jurisdiction. Ramirez, 334 F.3d at 852, 858.

The court in Ramirez went further and considered the related question of the extent of habeas corpus jurisdiction, expressly stating that its holding "also clarifies our prior decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment." 334 F.3d at 858. The court reviewed the decisions in Bostic v. Carlson and Neal v. Shimoda and concluded as follows:

> Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of

---

[1] The Court notes that Bostic involved a suit pursuant to 28 U.S.C. § 2241, not § 2254.

> the prisoner's confinement. In <u>Neal</u>, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. <u>Id</u>. at 822-23. Among other harms, both inmates argued that the classification affected their eligibility for parole. <u>Id.</u> We held that <u>Heck</u> did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." <u>Id</u>. at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful § 1983 action would provide only "a ticket to get in the door of the parole board." <u>Id</u>. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. <u>Id</u>.
>
> <u>Neal</u> makes clear that under <u>Preiser</u> habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, <u>Neal</u> accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

<u>Ramirez</u>, 334 F.3d at 858-59.

Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting parole only if there is a sufficient nexus to the length of imprisonment or a sufficient likelihood of affecting the overall length of a prisoner's confinement. <u>Docken v. Chase</u>, 393 F.3d at 1030-31. However, the appellate court has emphasized that measurement of the likelihood will result in an absence of habeas jurisdiction where the challenge will not *necessarily shorten* the overall sentence. <u>Ramirez</u>, 334 F.3d at 859. In <u>Ramirez</u>, expunging the disciplinary action was not shown to be likely to accelerate eligibility for parole; rather, success there would have meant only an opportunity to seek parole from a board that could deny parole on any ground already available to it. Thus, the suit did not threaten to advance the parole date. <u>Id.</u> at 859.

A liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Connor</u>, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995). The mere possibility, however, of a denial of parole at some later, yet undetermined, time, where one of the considerations for parole is inaccurate information about an inmate's gang membership, does not amount to the denial of a liberty interest. In <u>Sandin</u>, the U.S. Supreme Court concluded that a *possible* loss of credits due to a disciplinary conviction was insufficient to give rise to a liberty interest where "[n]othing in [the

1  State's] code requires the parole board to deny parole in the face of a misconduct record or to grant
2  parole in its absence, even though misconduct is by regulation a relevant consideration." Sandin, 515
3  U.S. at 487. The Court went on to note that "[t]he decision to release a prisoner rests on a myriad of
4  considerations," and an inmate is generally "afforded procedural protection at this parole hearing in
5  order to explain the circumstances behind his misconduct record." Id. at 487. The Court held that
6  "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the
7  procedural guarantees of the Due Process Clause." Id.

8  After Sandin, in order to demonstrate a liberty interest, an inmate must show that a disciplinary
9  conviction will inevitably lengthen the duration of the inmate's incarceration. Id. Petitioner cannot
10 make such a showing.

11 As Respondent correctly observes, the BPH is required by California law to consider a wide
12 range of factors in assessing whether an individual inmate is suitable for parole; indeed, the BPH may
13 consider factors as wide-ranging as the original crime, an inmate's criminal and social history, his
14 conduct in prison, any psychological evaluations, Petitioner's efforts at rehabilitation, his remorse and
15 understanding of the crime and its effects of the victims, as well as any parole plans he may have. Cal.
16 Code Regs. Tit. 15, § 2402(b)-(d). In other words, any parole decision depends on "an amalgam of
17 elements, some of which are factual but many of which are purely subjective appraisals by the Board
18 members based on their experience with the difficult task of evaluating the advisability of parole
19 release." Greenholtz v. Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9-10, 99 S.Ct. 2100
20 (1979).

21 Here, the mere fact of Petitioner's rules violation, while constituting one of a myriad of factors
22 that the BPH would consider in a parole hearing, is simply too attenuated to invoke the protections of
23 due process, Sandin, 515 U.S. at 487, and can hardly be considered so pivotal to the question of
24 granting parole that one could conclude that a sufficient nexus exists between it and the length of
25 imprisonment such that a sufficient likelihood exists of it affecting the overall length of a Petitioner's
26 confinement. Docken, 393 F.3d at 1030-31. Additionally, with respect to the actual forfeiture of
27 good-time credits, Petitioner's status as an inmate serving an indeterminate sentence combined with
28 the fact that he is beyond his Minimum Eligible Parole Date ("MEPD") defeats any such argument.

As a state prisoner serving an indeterminate fifteen years to life sentence, Petitioner's credit-earning is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> "Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date."[2]

Put simply, once Petitioner has reached his MEPD, his credit-earning potential as an inmate serving an indeterminate life sentence has no bearing at all on the length of time he will actually remain in prison, since, at that point, such a determination is made solely by the BPH after conducting a suitability hearing.

Petitioner is serving an indeterminate life term with the possibility of parole. Petitioner reached his MEPD on October 15, 1992, and has already had multiple parole suitability hearings. (Doc. 1, p. 29). Since the loss of the credits about which Petitioner complains can only be used under California regulations for adjusting the date of the MEPD, which had already passed long before the instant rules violation was committed, it is clear that any loss of such credits at this post-MEPD juncture can and will have no effect on Petitioner's ultimate release date. As discussed previously, only the BPH now has the power to affect the length of Petitioner's sentence. Although Petitioner argues that his parole date will be adversely affected by the mere fact of this rules violation, such a self-serving conclusion is unsupported by any persuasive evidence and, in any event, is entirely speculative.

2. <u>Early Release</u>.

Petitioner, in his July 17, 2013 request for judicial notice, cites a document originating with the Governor of California wherein, in response to a federal court order to reduce the size of California's prison population, the Governor proposes to review indeterminate life sentence inmates for release and use, as one criterion among many, whether the inmate has suffered a serious rules violation since his

---

[2] Title 15 of the Code of California Regulations § 2000(b)(3) defines a "life prisoner" as "a prisoner serving a sentence of life with the possibility of parole."  Life sentences may be imposed for, inter alia, both first and second degree murder. Cal. Code Regs., tit. 15, § 2000(b)(3)(A) and (B)). Here, Petitioner was sentenced to an indeterminate 15-year-to-life term for two armed robberies in which a victim was murdered. (Doc. 1, p. 66). Having been convicted of second degree murder, Petitioner falls within the provisions of this regulation vis-a-vis his credit-earning ability.

1 last eligibility hearing. (Doc. 18).

2 Although, at first blush, this would suggest that Petitioner's rules violation and subsequent sanction might satisfy Sandin's due process requirement, upon further reflection it is clear that it does not. Petitioner's request for judicial notice refers to an ongoing lawsuit in the Eastern and Northern Districts of California (Eastern District case no. 2:90-cv-00520-LKK-JFM ("90-00520")), which involves, inter alia, the overcrowding endemic in the California prison system. As part of that litigation, on June 30, 2011, a three-judge panel from the Eastern and Northern Districts of California ordered the State of California to reduce the prison population in compliance with the United States Supreme Court's order of May 23, 2011. (Case no. 90-00520, Doc. 4662). On April 11, 2013, that same panel ordered the State to "take all steps necessary to comply with [the Court's] population reduction order" of June 30, 2011. (Id.). In that order, California was required to submit a list of all proposed prison population reduction measures as well as a plan for compliance with the Court's orders. (Id.). On May 2, 2013, the State submitted such a list, but the Court deemed it not in compliance. (Id.). The Court then ordered the State to expand its plan, which is referred to now as the "amended plan," to include an expansion of good time credits in order to meet the Court's ultimate goal of reducing the prison population to 137.5% of design capacity by December 31, 2013. (Id.). The June 20, 2013 order required the State to "take all steps necessary to implement all measures" in the amended plan, commencing forthwith. (Id.).

On July 18, 2013, the State of California filed a response to the Court's April 11, 2013 order. (Case no. 90-00520, Doc. 4697). In the latter response, the State discussed the following measures in the amended plan for reducing the present inmate population: new prison construction, expanding fire camp capacity, increasing prison credits, expanding criteria for medical parole, establishing a new parole process for low-risk elderly inmates, slowing the rate of returning inmates to California, pursuing contracts with counties with available jail capacity, and, more germane to this case, the development of a court-ordered early release system. (Id.). The State indicated there were approximately 9,077 inmates "serving time for non-violent, non-serious, and non-registerable-sex offenses" who might be considered potential candidates for early release. (Id.). Among that population, however, were those who had committed serious in-prison felonies or who had been

validated prison gang-members; thus, excluding them from early release.  (Id.).  The State concluded that only 1,205 inmates within that larger population could be classified as "having a low risk to recidivate, have not been validated as a prison gang member, have not committed in-prison felonies within the past 10 years, and have less than a year to serve on their sentence."  (Id.).  Because the State is required to bridge a "gap" of reducing the population by 4,170, the State concluded that there were not enough low-risk, nonviolent offenders to satisfy the Court's reduction order and, thus, the State would have to develop an early-release system the included offenders who have committed violent crimes as well as offenders with elevated risk scores.  (Id.).[3]

From the foregoing description of the present litigation over prison overcrowding in California, it is obvious that no final plan has been adopted by the Court, and, moreover, that any plan that will ultimately be adopted for early release of inmates will involve a thorough review of many factors, only one of which would be serious rules violations subsequent to the last parole suitability hearing. Petitioner's opposition and motion for judicial notice unfairly imply that a serious rules violation would be the only factor that would Petitioner from being selected for early release.  However, even the brief description above shows that many factors, e.g., the violent nature of the commitment offense, felonies committed in the course of incarceration, and psychological assessments of the inmate's likelihood to pose a danger to the public, will all be carefully considered together before any final plan is submitted to the panel for its approval.

Despite Petitioner's position that the serious rules violation is the primary factor, it is significant that he was committed to the CDCR for a very serious and violent offense, i.e., armed robbery resulting in the death of a bystander.  Petitioner has long passed his MEPD, having already served 29 years on a fifteen years to life sentence, and has been found not suitable for parole on multiple prior occasions.  All of those facts, taken together, would suggest that, entirely apart from the challenged rules violation, Petitioner is not an ideal candidate for early release under any scenario.  To

---

[3] Although Petitioner cites to a document authored by the Governor of California that indicates he will "review individual files to identify serious rules violations committed since the last suitability hearing," the Court was unable to locate this language in any of the documents available to the Court in the docket of case no. 90-00520.

suggest that this one rules violation during the course of a 29-year period of incarceration would, by itself, exclude him from early release is neither credible nor reasonable.

Finally, for good reason, even where habeas jurisdiction does exist, federal courts are nevertheless reticent to micro-manage a respondent's decisions regarding the day-to-day handling of prison discipline and inmate safety. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment....Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life...." Sandin v. Conner, 515 U.S. 472, 482 (1995). In Procunier v. Martinez, 416 U.S. 396, 404-405 (1974), overruled in part on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court explained the basis for this deference:

> Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration. In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions. More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism.

Procunier, 416 U.S. at 404-405. Thus, even if Petitioner's claims regarding the conduct of the disciplinary hearing were valid, for the reasons set forth in Sandin and Procunier, this Court would be extremely hesitant to second-guess CDCR's administrative decision to find Petitioner guilty of a serious rules violation and sanction him accordingly.

Since Petitioner has failed to establish that the claim in the instant petition would, if resolved favorably to him, likely have an effect on the length of his sentence, it is not properly brought as federal habeas claim. Accordingly, the Court lacks habeas jurisdiction and therefore the claim should be dismissed for lack of jurisdiction.

///

///

**RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the motion to dismiss (Doc. 14), be **GRANTED** and the habeas corpus petition be **DISMISSED** for lack of habeas jurisdiction.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 26, 2013**                               **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE