UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL JOSEPH EKDAHL,<br><br>    Petitioner,<br><br>    v.<br><br>RALPH DIAZ, Warden,<br><br>    Respondent. | Case No.: 1:13-cv-00542-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS AND DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner in in custody serving a indeterminate life sentence. (Doc. 1) In this action, he challenges a 2010 prison disciplinary determination because, he claims, it alone precludes a favorable parole determination. (Doc. 1) Because the Court concludes the challenge to the prison discipline will not necessarily reduce his prison sentence, it finds it lack habeas jurisdiction and recommends the matter be **DISMISSED**.

I.   PROCEDURAL HISTORY

The instant petition challenges a 2010 prison disciplinary hearing rather than Petitioner's underlying 1984 conviction and indeterminate life sentence. (Doc. 1). Respondent filed a motion to dismiss the petition as untimely and for failure to state a cognizable federal habeas claim. (Doc. 14). In his opposition to the motion, Petitioner provided information that rebutted Respondent's timeliness argument; accordingly, Respondent filed a Reply in which he abandoned that claim in his motion to dismiss, but continued to maintain that the petition failed to state a cognizable habeas claim. (Doc. 17).

Thereafter, Petitioner filed a request for judicial notice in which he included materials directed at the latter argument. (Doc. 18).

After review of this material, the Court issued Findings and Recommendations to grant the motion to dismiss for lack of habeas jurisdiction. (Doc. 19). After objections were filed by Petitioner, both sides continued to file briefs and motions directed at the opposing side. In particular, Petitioner filed a document arguing that a transcript of a recent parole hearing established that the disciplinary hearing had an effect on the length of his sentence, an argument that contradicted the position taken by Respondent in the motion to dismiss. (Doc. 31). Accordingly, the Court ordered Respondent to supply a transcript of the parole hearing. (Doc. 33).

Before the transcript could be lodged, the District Judge issued an order granting the motion to dismiss as to any claims of violations of California law, but denying the motion to dismiss as to any due process claims. (Doc. 34). In so ruling, the District Judge acknowledged a split in the Court as to whether expungement of a disciplinary violation was likely to accelerate a petitioner's release on parole, the determining factor in whether habeas jurisdiction exists for such cases. However, the District Judge allowed the petition to proceed as to possible due process violations. (Id.).

Thus, the Court ordered Respondent to file a response consistent with the requirements set forth in the District Judge's order. (Doc. 35). Respondent filed the answer, challenging the substantive claim of a due process violation and the habeas jurisdiction of the Court. (Doc. 39). Respondent also filed the transcript of the parole hearing previously requested. (Doc. 42). Petitioner filed his traverse (Doc. 43) and a request for judicial notice of new evidence. (Doc. 44).

## II. FACTUAL HISTORY[1]

Prison officials issued a Rules Violation Report against Petitioner on December 2, 2010, contending that Petitioner had solicited a sexual relationship with a non-custody volunteer. (Doc. 1, Ex. D). Senior Hearing Officer ("SHO") Williams presided over the disciplinary hearing. (Doc. 1, Ex. E). Petitioner waived presenting any witnesses and the SHO did not present any either. (Id.). The SHO refused to allow Petitioner to ask a series of written questions of the non-custody volunteer,

---

[1] These facts are taken from the summary of evidence contained in the December 11, 2010 Rules Violation Report prepared following the disciplinary hearing by the Senior Hearing Officer ("SHO"). (Doc. 1, Ex. E).

2

indicating that he found the questions "degrading." (Id.).

Petitioner identified a handwritten note given by Petitioner to the non-custody volunteer, Ms. Partida, and Petitioner acknowledged that he had written it. (Doc. 1, Ex. E) The conclusion of the note stated that "P.S. can we be the type of friends who touch each other's fun parts." (Id.). When asked what he had meant by that, Petitioner stated that he and Ms. Partida "were in love and going to get married. She was going to quit her job and marry me, we had a beautiful relationship, it was not based on sexual desires it was based on love." (Id.). Petitioner further stated that he did not believe he was guilty of a Rules Violation because he did not believe there was any regulation prohibiting that type of behavior. (Id.).

The SHO found that Petitioner had violated the rule regarding soliciting a sexual relationship with a non-custody volunteer as follows:

> While this offense is not explicitly listed under CCR 3315 as a serious offense, it is justified by the fact that such misconduct potentially breaches institutional security as well as causing disruptions of facility operations and creating a threat to staff. The offense requires evidence that the inmate made overly familiar comments to a staff member, these comments are perceived by the staff member as suggesting or implying a sexual or romantic relationship and this staff member is offended by these comments.

(Doc. 1, Ex. E)

> The SHO based his findings on the statement of the correctional officer who issued the report that Petitioner had handed the handwritten letter to volunteer Partida who, upon examining the letter noted that it contained "inappropriate comments in an apparent attempt by [Petitioner] to initiate a sexual relationship with her. The SHO indicated he had contacted Ms. Partida and "she positively identified [Petitioner] by photograph as the inmate who handed her the letter.

(Id.).

**III.    DISCUSSION**

    A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Although the challenged disciplinary proceeding occurred at San Quentin State Prison, Marin, County, California, at the time of filing of the petition, Petitioner was housed at the California

Substance Abuse Treatment Facility, Corcoran, California, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

      B.      Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in

4

justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). The Court assesses the prejudicial impact of any constitutional error by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).Review of Petitioner's Claim.

Petitioner raises the following due process claims: (1) the SHO violated California regulations by finding Petitioner guilty of a violation that does not exist in any state or prison regulations; (2) the SHO "deviated from the regulatory process" by refusing to allow Petitioner to ask a series of questions of Ms. Partida and refused to require her to appear at the hearing; (3) the Marin County Superior Court denied Petitioner his federal constitutional rights by failing to overturn the SHO's findings which, Petitioner argues, were not based upon a preponderance of the evidence.[2]

---

[2] As discussed previously, the District Judge granted Respondent's motion to dismiss as to any claims based upon a violation of California law or regulations, but denied the motion as to any federal due process claims. Accordingly, the

C.  Failure To State A Cognizable Habeas Claim.

Respondent contends that the basis for the petition's claims, i.e., a due process violation at a prison disciplinary hearing resulting in loss of good-time credits, is not properly subject to federal habeas corpus jurisdiction because, as a prisoner serving an indeterminate sentence, Petitioner cannot establish that the adverse disciplinary finding would "necessarily" impact the duration of his sentence. (Doc. 39, pp. 5-6).  The Court agrees with Respondent.

1.  Supreme Court authority regarding habeas jurisdiction

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . ." 28 U.S.C. § 2254(a).  A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485, 93 S. Ct. 1827 (1973); Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.   Indeed, claims challenging the validity of a prisoner's continued incarceration, including the fact or length of the custody, lie within the "heart of habeas corpus" and are cognizable only in federal habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 499 n.14 (1973). In contrast, an action pursuant to 42 U.S.C. § 1983 is appropriate for a state prisoner challenging the conditions of prison life but not the fact or length of the custody. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser v. Rodriguez, 411 U.S. at 499; Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

With respect to prison disciplinary and administrative proceedings, it is established that a constitutional claim concerning the application of rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody in violation of the Constitution pursuant to 28 U.S.C. § 2254.  See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings).  The Supreme Court has held that challenges to prison disciplinary

---

Court will consider that the first two claims listed above were denied by the District Judge in his order and that the only remaining claim is the third claim arguing for a federal due process violation.

adjudications that have resulted in a loss of time credits must be raised in a federal habeas corpus action and not in a § 1983 action because such a challenge is to the very fact or duration of physical imprisonment, and the relief sought is a determination of entitlement of immediate or speedier release. Preiser v. Rodriguez, 411 U.S. 475, 500.  In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court determined that where success on the merits of a prisoner's claim would not "necessarily spell speedier release," the claim does not lie "at the core of habeas corpus" and a suit brought under § 1983 may proceed.  Id. at 82 (quoting Preiser, 411 U.S. at 489).

Petitioner case in in a different procedural posture than those in which the issue has been considered previously.  In these other cases, the issue before the Supreme Court was whether the prisoners' claims could proceed as § 1983 actions.  See Skinner v. Switzer, 562 U.S. 521, 131 S. Ct. 1289, 1293 (2011); ("May a convicted state prisoner seeking DNA testing of crime-scene evidence assert that claim in a civil rights action under 42 U.S.C. § 1983, or is such a claim cognizable in federal court only when asserted in a petition for writ of habeas corpus under 28 U.S.C. § 2254?"); Dotson, 544 U.S. at 76 ("The question before us is whether [state prisoners] may bring such an action under [§ 1983], or whether they must instead seek relief exclusively under the federal habeas corpus statutes."); Preiser, 411 U.S. at 477 ("The question before us is whether state prisoners seeking [injunctive relief compelling restoration of good conduct credits] may obtain equitable relief under the Civil Rights Act, even though the federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides a specific federal remedy"). By contrast, Petitioner has brought his claims in this action by way of a habeas petition pursuant to 28 U.S.C. § 2254. Neither Preiser nor Dotson decided whether the plaintiffs were foreclosed from bringing their claims in a habeas petition. See Dotson, 544 U.S. at 82 ("[W]e conclude that respondents' claims are cognizable under § 1983, i.e., they do not fall within the implicit habeas exception."); Preiser, 411 U.S. at 500 ("But we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983. That question is not before us. What is involved here is the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus.").

In Skinner, however, the Supreme Court appeared to go further than Dotson when it stated that "Dotson declared, however, in no uncertain terms, that when a prisoner's claim would not 'necessarily

7

spell speedier release,' that claim does not lie at 'the core of habeas corpus,' and may be brought, *if at all*, under § 1983." Skinner, 131 S.Ct. at 1299 n. 13 (quoting Dotson, 544 U.S. at 82) (emphasis added). Notwithstanding Skinner, the Supreme Court has never explicitly held that where a prisoner's claim might not result in speedier release, he is barred from pursuing his claim by way of a habeas corpus petition.

The Ninth Circuit has recognized that "although Supreme Court case law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction." Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir.2004); accord Jackson, 2011 U.S. Dist. LEXIS 97713, at *5, 2011 WL 3875859 ("While the U.S. Supreme Court has repeatedly held that a prisoner who seeks immediate or speedier release from custody (alleging a definite impact on custody in what is often termed a 'core' habeas challenge) must pursue his case through a habeas petition rather than a § 1983 action, the Court has not explicitly held that a prisoner whose challenge might not result in speedier release must press his case under § 1983 rather than a habeas petition.") (citing Docken, 393 F.3d at 1028)). In the absence of such a holding, the Ninth Circuit's cases appear to expand the boundaries of habeas jurisdiction notwithstanding Skinner's limitation.

2.   Ninth Circuit authority regarding habeas jurisdiction

As a general rule, when a petitioner challenges a disciplinary action that resulted in a loss of good conduct credits, the challenge must be brought in a habeas petition. This is "because a decision in the case in the prisoner's favor would require restoration of the lost time credits and would therefore accelerate the inmate's date of release, making the case the type of 'core' habeas challenge that must be pursued by habeas petition. E.g., Jackson v. Swarthout, 2011 WL 3875859 (E.D. Ca. Aug. 31, 2011)(citing Preiser, 411 U.S. at 487-488, 490). However, uncertainty arises where a prisoner challenges a disciplinary hearing that did not result in a credit loss or where a the prisoner serving an indeterminate life sentence has passed his Minimum Eligible Parole Date such that loss of credits do not affect the calculation of his first parole hearing. In these cases, prisoners often argue that the disciplinary action may serve as a basis for the parole board to deny parole, thus impacting the duration of their confinement. Id.

The Ninth Circuit has issued decisions that do not entirely coincide regarding such arguments. On one hand, numerous courts have held that habeas jurisdiction exists when a prisoner seeks to reverse a prison disciplinary finding when reversal is likely to accelerate the prisoner's parole eligibility. See, e.g., Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989) ("Habeas corpus jurisdiction ... exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." (citing McCollum v. Miller, 965 F.2d 1044, 1046 (9th Cir.1982))). On the other hand, as discussed earlier, Ramirez reached the opposite conclusion, reasoning that such a claim is speculative and, therefore, would not necessarily shorten the prisoner's length of confinement. See, e.g., Ramirez, 334 F.3d at 859 (9th Cir.2003) ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.")(emphasis supplied). Indeed, the Court in this case previously recognized "the inconsistent conclusions from the Ninth Circuit, District Courts within the Ninth Circuit, and Courts within the Eastern District of California concerning habeas jurisdiction where a petitioner challenges a disciplinary violation but no prison credits were lost or the petitioner is unable to receive prison credits." (Doc. 34, p. 4).

This lack of clarity appeared to have been resolved by the Ninth Circuit in Nettles v. Grounds, 788 F.3d 922 (9th Cir. 2015), in which the Ninth Circuit ruled that, pursuant to Skinner, 562 U.S. 521, habeas jurisdiction extends to claims involving prison disciplinary proceedings only if a petitioner's success will "necessarily spell speedier release," including "termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody." Nettles, 788 F.3d at 1001. Applying the Skinner standard, the Ninth Circuit held the district court in that case lacked jurisdiction over the discipline-related claim of a California inmate serving an indeterminate life sentence, who had not yet been found suitable for parole. Id. at 1003-04. However, the Court takes judicial notice of the fact that en banc rehearing in Nettles has been granted and, hence, the matter issue remains one in which different Courts in the Ninth Circuit have reached different results. As the District Judge in this case framed it, the critical question is "whether *expungement of a disciplinary violation is likely to accelerate the petitioner's release on parole*." (Doc. 34, p. 5)(emphasis in original). In denying Respondent's motion to dismiss on this same jurisdictional issue some eighteen months ago, the

District Judge noted that he disagreed that the petition should be dismissed <u>at that time</u>: "Reviewing only the allegations in the petition, without a response from Respondent or any additional evidence, does not resolve whether the Court's expungement of the disciplinary violation is likely to accelerate Petitioner's release from confinement." (<u>Id</u>.).

          a.      <u>Analysis</u>

Since the time the Court granted in part the motion to dismiss, Respondent has filed an answer and lodged the transcript of the contested parole hearing that Petitioner argues shows the disciplinary hearing affected his chances for parole eligibility. Also, Petitioner has submitted additional materials relevant to this issue. Accordingly, the Court there is sufficient information now before the Court to decide this jurisdictional question.

In denying parole suitability, the Board began by noting that Petitioner had a number of factors in his favor: he had no history of violent behavior other than the life offense; he was then fifty-one years old and unlikely to recidivate; he had prepared a good parole plan that involved a half-way house in San Francisco; he had expressed remorse for the life offense; and he had completed a significant number of programs while in custody. (Doc. 42, Ex. 1 ("Hearing"), pp. 112-113). However, the Board concluded that these mitigating factors were "far outweighed" by "other considerations," including the nature of the life offense for second degree murder, which the Board characterized as "cruel, vicious, and brutal," the fact that his previous denial in 2009 showed that the Board was "really concerned about" Petitioner's numerous disciplinary violations, and about his 2010 rules violation that is the subject of this petition. (Hearing, pp. 113-114).

The Board noted that Petitioner had a history of "minimizing" his responsibility for his actions. (Hearing, p. 114). On that topic, the Board considered Petitioner's 2010 violation to be a kind of "recidivism" within the institutional setting, that it was a "very serious violation" and "recent," and that it appeared to continue a pattern similar to Petitioner's conduct set forth in his previous rules violations. (<u>Id</u>., pp. 115; 116; 118). As such, the Board considered the 2010 violation to be a "main element" in the denial of parole. (<u>Id</u>., p. 116). The Board noted that Petitioner had been found guilty of eighteen prior minor disciplinary violations and nine major ones. (<u>Id</u>., p. 56). The Board pointed out that the current rules violation showed a "total disconnect" between what Petitioner had construed as a

"relationship" with the victim and how the victim actually viewed their acquaintance. (Id., p. 122). To the Board members, this showed Petitioner had "serious judgment problems." (Id.).

When asked to explain how the incident with the victim arose, Petitioner explained that he had first met her at a health fair at San Quentin Prison. He said that she had come up to him at the fair on several occasions and stood so close to him that her breast pressed against him. He said she shook his hand several times, patted him on the back, and talked about the difficulties of having relationships. Petitioner recognized a "red flag" in the victim's approach because, normally, volunteers did not touch the prisoners and vice-versa, but nevertheless began to feel that perhaps the victim actually liked him. Petitioner did not see her again until he entered a program where, unknown to him, the victim, a nutritionist, was giving a presentation. Thereafter, he exchanged two notes with her and had begun to feel that there was some kind of non-sexual relationship between them. The final note, that formed the basis of proof at the disciplinary hearing, was written in the hope that they could have a relationship in the future. After the disciplinary hearing, Petitioner worked with several female mentors who helped Petitioner to understand the need to establish "boundaries" with others. He told the Board he now understood that neither the victim nor he had properly established their boundaries. (Hearing, pp. 55-70).

Considering the entire transcript, along with all of the other evidence presented, the Court finds that Petitioner has failed to meet his burden of showing a sufficient nexus between the disciplinary violation and a shortening of his sentence that would satisfy either the more stringent Ramirez "necessarily reduces" standard or the more lenient Bostic "likely reduces" standard. Certainly, under Ramirez, the mere fact of a disciplinary violation is, by itself, too attenuated to provide the requisite nexus between the event and the shortening of an inmate's sentence. However, even under Bostic, the Court cannot say that the present record establishes a likelihood that the disciplinary hearing affected the Board's decision to deny parole and that, absent that disciplinary violation, Petitioner would have been granted parole or his sentence would have been shortened.

The Court reaches this conclusion for several reasons. First, inherent in any such calculus, is the difficulty of removing one element of the Board's decision-making and then trying to decide if the remaining elements would still have resulted in a denial. Obviously, any such decision by the Court

would necessarily be hypothetical and speculative, but <u>Bostic</u> appears to require the district courts to engage in just such speculation.  Absent a Board decision that actually quantifies the value of each factor resulting in a denial, the Court is left to parse the evidence and the transcript in an attempt to objectively "measure" such intangibles.  Here, the Board indicated that the many positive aspects to Petitioner's case were "far outweighed" by his disciplinary history of 18 minor and 9 major violations, the brutality and viciousness of the crime underlying his life sentence coupled with his 2010 prison rules violation. This strongly suggests that all three of the discussed factors in the denial were quite serious in the minds of the Board members.  Thus, even though the Board characterized the 2010 violation as a "main element" in its denial, it does not necessarily follow that, absent that "main element," parole would have been granted.

Second, and perhaps more significantly, the Board appeared to rely not on the fact of Petitioner's guilty finding on the rules violation or the sanctions imposed, but, rather, upon the undisputed circumstances of the violation. In the Board's view, this conduct confirmed a long-standing history by Petitioner of "minimizing" his responsibility and showed a "serious judgment problem" resulting from the "total disconnect" between Petitioner's view of the victim and the victim's view of him.  At the hearing, in essence, Petitioner conceded the essential facts of the rules violation and acknowledged only that he had been remiss in failing to establish boundaries between himself and the victim.  He attributed the wrongdoing to the victim and, seemingly, did not question his implausible interpretation of his contacts with her.[3]

Clearly, the Board was seriously concerned about this demonstrated lack of judgment, as well as the fact that the 2010 violation appeared to fit into an ongoing pattern of conduct by Petitioner where he would follow prison rules for long periods and then violate them.  Board expressed concern that because Petitioner could not abide by the rules within the confines of an institutional setting, there was no confidence that Petitioner could obey the rules when released on parole.  (Hearing, p. 115).

Ignoring whether Plaintiff's conduct constituted an actual rules violation, and taking as true the

---

[3] Despite the scant and limited contact with the victim, he told the Board, as noted above, that the two were 'in love," in "a beautiful relationship" and were planning "to marry." (Doc. 1, Ex. E)  This is flatly contradicted by the victim who testified she was "offended" by the letter given to her by Petitioner.

12

undisputed facts and circumstances of the Petitioner's conduct which gave rise to the rules violation report, the Board expressed serious concerns about Petitioner's suitability for parole based upon his lack of judgment.  Put another way, even assuming, arguendo, that the 2010 rules violation weighed heavily in the denial, it was the *uncontroverted circumstances* of the conduct giving rise to the violation—not the finding of guilt or the sanction imposed—that appears to have contributed to the denial of parole.  As such, expungement of the violation and removal of the sanctions would not have benefited Petitioner nor would it "likely" have resulted in a grant of parole.  Petitioner had already acknowledged his lack of judgment in pursuing the relationship with the victim and it was that lack of judgment that appeared to most concern the Board.

In this regard, it must be emphasized, that the BPH is required by California law to consider a wide range of factors in assessing whether an individual inmate is suitable for parole; indeed, the BPH may consider factors as wide-ranging as the original crime, an inmate's criminal and social history, his conduct in prison, any psychological evaluations, Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and its effects of the victims, as well as any parole plans he may have.  Cal. Code Regs. Tit. 15, § 2402(b)-(d).  In other words, any parole decision depends on "an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based on their experience with the difficult task of evaluating the advisability of parole release."  Greenholtz v. Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9-10, 99 S.Ct. 2100 (1979).

Here, as discussed above, the Court concludes that Petitioner has not established that expungement of the 2010 violation and removal of the sanctions would "likely" have accelerated Petitioner's release, i.e., that it would have resulted in a different outcome at the 2014 parole suitability hearing.  Bostic, 884 F.2d 1267, 1269.  Accordingly, the Court lacks habeas jurisdiction to hear the petition.[4]

---

[4] Petitioner has filed additional "evidence" to support his contention that expungement of the 2010 violation and removal of the sanctions imposed would shorten his sentence, in the form of a 2015 decision by the parole board to grant an earlier parole hearing than the original three-year term. (Doc. 44). However, the language upon which Petitioner relies is the Board's notation in the grant of early review that the 2014 denial was based in part upon a finding that Petitioner has a "pattern of negative institutional behavior as evidence by his disciplinary reports." (Doc. 44, pp. 2; 5). Rather than

D.   Due Process Violation

Assuming the Court did not lack jurisdiction, the Court still would deny the petition on its merits. Petitioner's primary contention is that prison officials denied him his federal due process rights at the disciplinary hearing. Respondent contends that Petitioner was afforded all of the due process to which he was entitled.  The Court agrees with Respondent.

1.   Standard of Review

Under the Fourteenth Amendment, no state shall deprive any person of life, liberty, or property without due process of law.  Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). A prisoner in a prison disciplinary hearing is not entitled to the full array of due process rights that a defendant possesses in a criminal prosecution. Id. at 556.  However, a prisoner who is accused of serious rules violations and who may be deprived of his or her good-time credits is entitled to certain minimum procedural protections.  Id. at 571-71 n. 9.

The process due in such a prison disciplinary hearing includes: (1) written notification of the charges; (2) at least a brief period of time after the notice to prepare for the hearing; (3) a written statement by the fact-finders as to the evidence relied on and reasons for the disciplinary action; (4) the inmate facing the charges should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.  Id. at 564, 566, 570.

In addition, a decision to revoke an inmate's good-time credit does not comport with minimum procedural due process requirements unless its underlying findings are supported by "some evidence." Superintendant v. Hill, 472 U.S. 445, 454 (1985).   In reviewing a decision for "some evidence," courts "are not required to conduct an examination of the entire record, independently assess witness

---

supporting Petitioner, however, such language merely confirms the Court's own conclusion that Petitioner's entire disciplinary history was at least as influential in the 2014 denial as was the 2010 violation.  The language relied upon by Petitioner refers to a "pattern" of behavior, not to an individual incident. At the 2014 hearing, the Board repeatedly referred to this pattern, and focused upon the 2010 incident primarily to show that the pattern continued to exist.  Removing the 2010 violation would only serve to shorten, not eliminate, this pattern of negative institutional behavior and would do nothing to eliminate the conduct which gave rise to the rules violation report.  As such, it does little to persuade the Court that removal of the 2010 violation would have "likely" resulted in a grant of parole.

14

credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." Id. at 455-56. The Ninth Circuit has further held that there must be "some indicia of reliability of the information that forms the basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (uncorroborated hearsay statement of confidential informant with no firsthand knowledge is not enough evidence to meet Hill standard.)

    2. Analysis

  It appears undisputed that Petitioner received written notification of the charges within the time frame required by state law. Similarly, it appears uncontroverted that he had a period of approximately eight days from the date of issuance of the Rules Violation report until the disciplinary hearing, thus affording him ample opportunity to prepare a defense. Third, a written statement was issued by the fact-finder as to the evidence relied on and reasons for the disciplinary action.

  Finally, Petitioner waived calling any witnesses, but contends he was wrongfully refused the opportunity to ask questions of the victim because, in the opinion of the SHO, the questions Petitioner wished to ask were "degrading." Wolff permits witnesses to be called by the petitioner when it would not be unduly hazardous to institutional safety or correctional goals to do so. The SHO's decision appears to be sound in that Ms. Partida had already testified that Petitioner was the one who gave her the handwritten note and that she was offended by it. Petitioner did not deny writing the note, but instead argued that he did so out of love and in the hope of marrying Ms. Partida. The SHO asked Petitioner what Ms. Partida could say at the hearing that would add anything to the relevant evidence and Petitioner was unable to supply an answer. It appears that the rule allegedly violated in this case is not based on intent but instead upon a reasonable reading of the contents of the handwritten note. The note itself clearly contains references to sexual activity between Petitioner and Partida, thus establishing the requisite elements for the violation. It seems extremely unlikely that Ms. Partida could have added any relevant testimony by submitting herself to potentially "degrading" questions from the very individual who had written the offending note. As such, the Court concludes that all of the basic due process requirements were met in this case, thus precluding any finding that habeas relief is justified. Wolff v. McDonnell, 418 U.S. 554, 556, 570.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus (Doc. 1), be DISMISSED for lack of jurisdiction and, alternatively, DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 28, 2016**          /s/ Jennifer L. Thurston
                                      UNITED STATES MAGISTRATE JUDGE